CELIA STONE and SADIE STONZEK, complainants-appellants,

*v.*

PERCY W. LIMOUZE, defendant-respondent.

[Submitted May 28th, 1932. Decided October 17th, 1932.]

*Mr. Earl A. Merrill,* for the complainants-appellants.

*Messrs. Platoff, Saperstein & Platoff (Mr. David Saperstein,* of counsel), for the defendant-respondent.

The opinion of the court was delivered by

TRENCHARD, J.

The complainants below appeal from a decree dismissing their bill. The situation was this:

On December 26th, 1928, Celia Stone and Sadie Stonzek, the complainants below, delivered to Fred Perle $1,600 with instructions to buy shares of Ford of England stock with it. Perle failed to buy the stock, but turned over $1,350 of that money to Percy W. Limouze, the defendant below, with instructions to purchase one hundred shares of Standard Oil stock at the current price to be carried in Limouze's account

with Perle for the latter's account and risk pursuant to an established practice between Perle and Limouze. That was done and the purchase price being more than $1,350 Limouze pledged his own credit with a bank, through which the purchase was made, for the balance, and the certificate was delivered to the latter and the bank held it as collateral security for the loan. On December 31st, 1928, the Standard Oil stock was sold by the request of Perle at a profit, and the bank was paid off. On January 2d, 1929, and thereafter, other stocks were purchased on margin on the order of Perle, employing the $1,350 which came back to Limouze, together with the profit on the Standard Oil transaction. These latter purchases were held until the falling prices in 1929 completely wiped out the equities and resulted in a deficiency. In February, 1930, the complainants filed a bill in chancery against Perle, the bank, and Limouze. According to the undisputed proofs in the present case the present defendant never knew until the institution of that suit, of the existence of the complainants or of their interest in the funds. That bill alleged that Perle had failed to buy Ford of England stock, but had started a speculation on his own account. It then alleged that certain stocks were purchased with those moneys and that Limouze claimed to have an interest in them, and prayed that the rights of Perle, the bank and Limouze be ascertained, and Perle be required to account to complainants for the profits and interest in the securities purchased. That suit resulted in a decree of dismissal so far as the defendant Limouze was concerned, and holding Perle for the $1,600 as personally liable for the misappropriation of the trust funds. It was after the loss of the securities, and after the complainants had failed to get their money back from Perle that the present bill of complaint was filed against Limouze, claiming from him a return of the $1,350 which, as the bill charges, he used "to speculate with, on margin, in stocks of various corporations."

Now, whilst the vice-chancellor filed no formal opinion, it appears from the language used by him in dismissing the bill, that he did so because the proof was ample and uncontra-

dicted that the defendant, at the request of Perle, employed the fund in question in the purchase of stock on margin, without any notice or knowledge whatsoever, that they were the funds of the complainants or that the complainants had any interest in them.

Our examination of the proofs results in the conclusion (although complainants argue to the contrary) that the vice-chancellor was quite right in fact and in law.

It appears by the proofs without dispute that the defendant had no knowledge of a trust relation between Perle and the complainants, and that the funds were lost in their employment on the order of Perle in the purchase of stock on margin.

We have then this situation: Complainants placed moneys in the hands of Perle for a definite purpose. Perle did not use them for that purpose, but turned them over to Limouze for a different purpose, but without notice to Limouze and without his knowledge that the moneys were other than the property of Perle or that complainants had any interest therein. It follows upon well established principles, that Limouze was not chargeable with any trust; that since the complainants had it in the power of their agent to use the moneys, and since, where one of two innocent parties must suffer, the loss must fall upon complainants who reposed the confidence and thereby made the loss possible. *Wysakowska* v. *Polish-American Association, 96 N. J. Law 447; Morris* v. *Joyce, 63 N. J. Eq. 549; Putnam* v. *Clark, 29 N. J. Eq. 412; affirmed, 33 N. J. Eq. 338.*

Having reached the conclusion that the record amply justifies the decree below for the reason indicated, we make no reference to other substantial reasons which have been argued for affirmance, nor to the evidence tending to support such other reasons.

The decree below will be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.